**Leon BITTICK, Appellant,**

v.

**David Clifton WARD, Appellee.**

**No. 7086.**

Court of Civil Appeals of Texas.

Beaumont.

Nov. 13, 1969.

Motion for Rehearing Overruled
Dec. 4, 1969.

Musslewhite, Maroney & Cely, Lufkin, for appellant.

Renfrow, Zeleskey, Cornelius, Rogers & Berry, Lufkin, for appellee.

STEPHENSON, Justice.

This is an action for damages for personal injuries received in an automobile collision. Trial was by jury and judgment was rendered for plaintiff upon the special issues. The parties will be referred to here as they were in the trial court.

The jury found defendant negligent in not keeping a proper lookout, and that this was a proximate cause of the occurrence in question. These findings are not under attack. In response to the first damage issue covering doctor's services and drug expense, the jury gave this answer: "$500.00 five Hundred & no cents. This is all in this case now & futcher (Expence) [sic]." The jury then answered "none" to the second damage issue on future medical expenses, as well as to the third damage issue covering general damages, including pain and suffering.

Plaintiff's first point of error is that there is no evidence to support the answer of "none" to the third damage issue mentioned above. Plaintiff's second and third points of error are that there is insufficient evidence to support such finding, and that such finding is contrary to the great weight and preponderance of the evidence. If any of these points is sustained, the case would have to be reversed and remanded, rather than rendered, inasmuch as we would not be permitted under the law to furnish an amount for such damages, and thereby substitute our finding for that of the jury.

We have made a careful study of the entire record, and have concluded that the undisputed evidence shows plaintiff had sustained physical pain and mental suffering and that her ability to perform her household work had been impaired. There was no evidence to support the answer "none" to the third damage issue. The only witnesses who gave testimony as to the state of plaintiff's health were the plaintiff, the plaintiff's husband, and Dr. H. A. Hooks. The hospital record was also offered in evidence.

Plaintiff gave the following testimony: She was 41 years of age at the time of the collision made the basis of this suit. She

was a passenger in the rear seat of an automobile which was standing still at the time it was struck by an automobile driven by defendant. That defendant's car struck the car in which plaintiff·was riding in the rear end with such force that the impact knocked the breath out of her. The sudden motion caused her to go forward and then jerk back when she struck her back on the arm rest. A violent neck pain and headache hit her immediately. Her husband carried her to the hospital. That she had never had any trouble with her neck or back before this collision. At the time of trial, over a year later, she complained of still having pain in her neck, head and back. She had the pain all of the time, but it is worse when she does household work. She has not been able to do heavy cleaning, heavy lifting, or mow the lawn since the collision, all of which she had done before. She no longer sleeps well at night, can't sit long, and is now irritable.

Plaintiff's husband testified: They had been married for 27 years, and his wife had done all of her housework before this accident. He was also a passenger in the automobile which was struck by defendant a severe blow. After the collision, his wife complained of pain in her neck, head and back. He carried his wife from the scene of the collision to the emergency room of the hospital where she was treated. His wife has made the same complaints since the collision, plus that of numbness in the arm. Her pain is growing worse. She is more nervous and more irritable since the collision, and cannot do the heavy housework she used to do.

The hospital record was offered in evidence showing that plaintiff was brought in after the collision and examined and treated by Dr. G. Hardy Rudd. Such report showed that doctor gave as his diagnosis, contusion of the right lower chest, posteriorly, which meant a bruise to the lower part of her back.

Defendant gave the following testimony: He was driving along between 30 and 35 miles per hour. He saw the light was green at a point about half a block from an intersection and noticed there was a car about 75 feet ahead of him. A passenger in his car said, "Here's the map," and defendant looked at it. As he looked down, he took his foot of the gas and his car slowed down to about 25 or 30 miles per hour. He looked up from the map and the car in front of him was stopped 15 or 20 feet ahead. He applied his brakes, but they did not hold and collided with the car in which plaintiff was a passenger. The impact of the collision bent the hood and "busted" the radiator of defendant's car. The car in which plaintiff was riding had the rear end dented in so that the trunk could not be opened and required expensive repairs. The impact was so severe the windshield of defendant's car was broken when struck by his passenger's head.

Dr. H. A. Hooks gave this testimony: Plaintiff came to see him August 21, 1967, and gave him a history similar to the one described in plaintiff's testimony. She complained of pain in the neck and back and headaches. Plaintiff had a whiplash type of injury. He found muscle spasm in the cervical spine area which he diagnosed as acute cervical strain. He prescribed neck exercises and medicine which included muscle relaxants. A new diagnostic instrument called a medcosonolator was used with which he was able to detect pain and muscle spasm. He saw plaintiff again September 13, 1967, and she had the same complaints as the first visit. When he saw plaintiff October 9, 1967, she complained of numbness in her right arm which indicated nerve root involvement. He saw plaintiff November 11, 1967, and had x-rays taken that showed a straightening of the cervical curve, which was caused by the muscle spasm. He saw plaintiff again October 27, 1968. His final diagnosis was cervical neuropathy which means a disease or injury to the nerve root. In his opinion, based upon the history, his observation

and findings, plaintiff's condition in all reasonable probability was caused by the accident made the basis of this suit. The condition of plaintiff he found was calculated to cause physical pain and mental anguish. Plaintiff had not improved since he first saw her, and a minor injury to the nerve root would have been expected to improve by now. Plaintiff has sustained a severe neck injury, the condition she has tends to get worse and most likely it is permanent.

This being all of the evidence in the record reflecting upon plaintiff's injuries and damages, the answer of the jury that plaintiff sustained no damages in response to the third damage issue not only has no support in the evidence, but is contrary to all of the evidence. Lowery v. Berry, 153 Tex. 411, 269 S.W.2d 795 (1954).

Defendant has a counter point that plaintiff's point of error as to the third damage issue should be disregarded because plaintiff had the burden of proof on such issue. The case, Smith v. Safeway Stores, Inc., 433 S.W.2d 217 (Tyler, Tex. Civ.App., 1968, error ref. n.r.e.), is cited as supporting this position. The Smith Case quotes from Texas & Pacific Railway Company v. Van Zandt, 159 Tex. 178, 317 S.W.2d 528 (1958), to the effect that whether plaintiff sustained any injury was a controverted fact issue, upon which plaintiff had the burden of securing a favorable finding. In the Van Zandt Case, the Supreme Court reversed the trial court because of its failure to submit a requested issue asking if plaintiff had sustained any injury. This particular question was not in either the Smith Case or our present case. In the case before us, no issue was submitted to the jury as to whether plaintiff sustained an injury, but that fact was assumed by the court in submitting the three damage issues. This method of submission is approved in the Van Zandt Case, where there is no question under the facts of a case but that plaintiff did sustain some injury. In our case, defendant has made no attack upon the answer of the

jury to the first damage issue in which it found $500.00 as the amount of damage for doctor's services and drug expense "directly and proximately resulting from the occurrence in question." Further analysis of the Smith Case shows the case, C. & R. Transport, Inc. v. Campbell, 406 S.W.2d 191 (Tex.Sup., 1966), was cited as authority for the proposition that a negative answer to an issue means nothing more in law than that the person requesting the submission failed to discharge the burden of proving such issue. A damage issue was not involved in the Campbell Case. The court, in the Smith Case, then makes these two statements:

"* * * Therefore, we believe we would be entitled to disregard appellant's first two points of error [no evidence and insufficient evidence] because neither point contains any complaint subject to review.

"Nevertheless, since we are required to review all of the evidence in the record because of appellant's third point of error [against the overwhelming weight and preponderance of the evidence], we have examined the record from the standpoint of whether an injury was established as a matter of law. We have concluded that it was not." (433 S.W.2d at p. 219).

So, even though the Tyler Court in the Smith Case stated it would be entitled to disregard the first two points of error, it then proceeded to pass upon the third point of error and considered the entire record. We do not consider the Smith Case as supporting defendant's position and the counter point is overruled.

Defendant's second counter point is that the jury answer to the third damage issue was not so against the great weight and preponderance of the evidence as to be manifestly unjust and wrong because it was clear the jury intended to compensate plaintiff for her general damages by its answer of $500.00 to the first damage issue.

Defendant argues that plaintiff proved only $139.00 as incurred medical expense, and the remainder of the $500.00 was in reality for her general damages. In support of this contention, defendant argues: In approaching this problem, the main object is to ascertain the intention of the jury. Wanda Petroleum Co. v. Reeves, 385 S.W.2d 688 (Waco, Tex.Civ.App., 1964, error ref. n.r.e.). A reasonable rather than a technical construction should be given to special issues and answers. Texas Indemnity Ins. Co. v. Staggs, 134 Tex. 318, 134 S.W.2d 1026 (1940). It is the duty of the courts to try to interpret a judgment so as to uphold the judgment. First Federal Saving & Loan Ass'n. of Dallas v. Sharp, 359 S.W.2d 902 (Tex.Sup., 1962).

An examination of these cases shows that even though the Reeves Case makes the statement attributed to it, the court held the jury verdict to be ambiguous and reversed and remanded the case for another trial. The Reeves Case also cites Northern Texas Traction Co. v. Armour & Co., 116 Tex. 176, 288 S.W. 145 (Com. App., 1926) in which case, this statement is made:

"'As to the true construction of such a verdict, neither the lower court' nor an appellate court 'is permitted to speculate. The verdict must find all the issues made by the pleading in language which does not admit of mistake. It should be the end and not the continuation of the controversy.' Moore v. Moore, 67 Tex. 293, 3 S.W. 284." (288 S.W. at p. 146.)

The complete quotation from the Staggs Case, supra, is as follows:

"We believe that the construction which we have given to the issues and the jury's answers to them is in accord with the rules which require that a reasonable rather than a technical construction be given to special issues and the answers to them as a whole, and which permit the disregarding of conflicts or contradictions which are apparent rather than real and the entry of judgment, without reference to immaterial issues, on the answers to material issues which afford sufficient basis for judgment." (134 S.W.2d at p. 1030.)

The court held the injury a claimant sustains under the compensation law did not have to be the sole cause of disability or death, and did not have to be a proximate cause, but that proof the injury is a producing cause is sufficient. We consider the Staggs Case to be authority for the proposition that unwarranted findings may be disregarded and judgment rendered upon valid findings, and nothing more as it relates to our present case.

The complete quotation from the Sharp Case, supra, is as follows:

"* * * If the jury finding is ambiguous or unclear, the courts must try to interpret the finding so as to uphold the judgment. * * *" (359 S.W.2d at p. 903).

At issue in the Sharp Case was a bid made at a trustee's sale. The jury found the plaintiffs would have produced the cash (amount of their bid) within a reasonable time, which was defined in the court's charge to mean "such time under all the circumstances a man of reasonable prudence and diligence would have needed to perform the act contemplated." The majority opinion in the Sharp Case construed reasonable time to mean before 4:00 p.m. on the date of the sale, and found all of the evidence to support a jury finding to mean plaintiff would have produced the cash before 4:00 p.m.

We have concluded from our study of these and other cases that we have no authority to construe the jury answer to the first damage issue to mean the jury intended a part of the $500.00 to include the general damages under the third damage issue. This counter point is overruled.

Judgment reversed and remanded.